**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**AT LOUISVILLE**

**UNITED STATES OF AMERICA**                                         **PLAINTIFF**

**vs.**                                 **CRIMINAL ACTION NO.  3:19-CR-147-CRS**

**MIGUEL ANGEL PAULET KUPELIAN**                          **DEFENDANT**

<u>**MEMORANDUM OPINION AND ORDER**</u>

This matter is before the Court for consideration of the Report and Recommendation of the United States Magistrate Judge (DN 83) (the "Report") addressing defendant Miguel Angel Paulet Kupelian's motions to suppress evidence (DNs 64, 65) and the defendant's objections thereto (DN 84).

Kupelian was indicted with co-defendant Nestor Ernesto Quevedo Gomez on charges of conspiracy to possess with intent to distribute and possession with intent to distribute 500 grams or more of methamphetamine.  Kupelian filed a motion to suppress evidence seized during a search of a dwelling located at 11004 Harrison Lane in Fairdale, Kentucky (DN 64).  He also sought suppression of statements allegedly made by him at the time of the search and his arrest at that property (DN 65).  The motions were referred to the United States Magistrate Judge for hearing, if necessary, and for issuance of findings of fact, conclusions of law, and recommendation concerning the disposition of the motions.  The magistrate judge held an evidentiary hearing on the motion to suppress statements.  She decided the motion to suppress seized evidence on the briefs.  She recommended that both motions be denied.  The Court has now considered the Report

and the objections thereto and concludes that Kupelian's motions should be denied for the reasons that follow.

1.   Motion to Suppress Evidence Seized from 11004 Harrison Lane

On July 22, 2019, Detective Brian Reccius of the Louisville Metro Police Department applied for and obtained a search warrant for 11004 Harrison Lane in Louisville, as well as four particularly described vehicles and the person of Kupelian.  DN 68-1.  Pursuant to that warrant, drugs, guns, ammunition, cash, and an iPhone were seized from the dwelling (DN 68-2).  Nothing was seized from the vehicles or Kupelian's person.  Kupelian was present at the property at the time of the search and was placed under arrest.  *See* Ex. 5 to 5/14/2021 Suppression Hearing Transcript (DN 79, 85).  Kupelian has challenged the sufficiency of the affidavit submitted in support of the search warrant and seeks suppression of the evidence he asserts was seized pursuant to a warrant authorized without probable cause.

The Court has not been given information concerning the basis upon which Kupelian challenges the search of the property which is described in the warrant as a "stash house."[1]  For purposes of this motion, the parties appear to concede that Kupelian has standing to challenge the search and the Court will therefore proceed from this premise.

---

[1] The magistrate judge indicates that the property was "Kupelian's residence" which is apparently true. The affidavit executed by Special Agent Michael Munson in support of the federal Criminal Complaint signed and filed on July 30, 2019, eight days after the search, indicates that "[a]ccording [sic] Jefferson County PVA records, KUPELIAN is a listed owner of the residence having purchased it on or about July 1, 2018." DN 1, p. 4. The Court finds nothing in the record to suggest that Detective Reccius checked the PVA records as part of his substantiation of the informant's tip and this fact is not mentioned in the affidavit for search warrant or in the FBI 302 which was based upon information provided by Reccius to Munson contemporaneously with the investigation. Kupelian has not described the property as his residence.  This may amount to a distinction without a difference for standing purposes inasmuch as the defendant appears to have a legal interest in the property, despite the fact that the facts have not been developed nor has Kupelian articulated a ground for standing to challenge the search.  However, for accuracy's sake, we will refrain from referring to the dwelling as Kupelian's "residence."

2

The magistrate judge concluded that the search warrant affidavit for 11004 Harrison Lane was supported by probable cause and that even if probable cause was lacking, the Court should decline to suppress the evidence as the officers reasonably relied upon what was a facially valid warrant.

Kupelian objects to these conclusions.  He urges that the affidavit lacks probable cause because (1) it contains boilerplate language describing the reliability of the unnamed informant; (2) the informant did not express first-hand knowledge concerning the premises and the criminal activity purportedly occurring there; and (3) the information from the unnamed informant was not substantially corroborated by independent police investigation.  DN 84, p. 1.  The Fourth Amendment to the United States Constitution provides that no warrants shall issue without probable cause.  U.S. Const. amend. IV.

Generally, evidence obtained in violation of the Fourth Amendment cannot be used in criminally prosecuting the victim of the illegal search and seizure. *Illinois v. Krull*, 480 U.S. 340, 347, 107 S.Ct. 1160, 94 L.Ed.2d 364 (1987). In 1984, however, the Supreme Court "established a new objective inquiry limiting suppression to circumstances in which the benefits of police deterrence outweigh the heavy costs of excluding 'inherently trustworthy tangible evidence' from the jury's consideration." *United States v. Gilbert*, 952 F.3d 759, 763 (6th Cir. 2020) (quoting *United States v. Leon*, 468 U.S. 897, 907, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984)).

Pursuant to this good faith exception, evidence "obtained in objectively reasonable reliance" on a "subsequently invalidated search warrant" need not be suppressed where an officer acts in good faith reliance on the warrant. *United States v. Brown*, 828 F.3d 375, 385 (6th Cir. 2016) (quoting *Leon*, 468 U.S. at 922, 104 S.Ct. 3405).

*United States v. Torbert,* No. 1:19-cr-31, 2021 WL 779147, *6 (S.D.Ohio Mar. 1, 2021).  In seeking authorization of a search warrant, the applicant must submit an affidavit which provides facts upon which the reviewing judicial officer may find that there is a "fair probability that contraband or evidence of a crime will be found in a particular place."  *United States v. Brooks*, 594 F.3d 488, 492 (6th Cir. 2010)(quoting *United States v. Berry*, 565 F.3d 332, 338 (6th Cir.

2009)).  "[P]robable cause is a 'practical and common-sensical standard[.]'" *Florida v. Harris*, 568 U.S. 237, 244, 133 S.Ct. 1050, 185 L.Ed.2d 61 (2013).  "It requires only 'the kind of fair probability' on which 'reasonable and prudent [people,] not legal technicians, act.'" *United States v. Reed*, 993 F.3d 441, 447 (6th Cir. 2021)(quoting *Florida v Harris, supra.*, and *Illinois v. Gates*, 462 U.S. 213, 231, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527(1983)).

In reviewing the magistrate judge's probable cause determination, the Court must evaluate the sufficiency of the affidavit under the "totality of the circumstances, not line-by-line scrutiny," *United States v Thomas*, 605 F.3d 300, 307 (6th Cir. 2010)(citing *Gates*, 462 U.S. at 239)  and limit the inquiry to the information contained solely within the four corners of the affidavit.  *Brooks*, 594 F.3d at 492.

The affidavit in support of the search warrant for 11004 Harrison Lane was based upon a tip received by Detective Brian Reccius of the Louisville Metro Police Department ("LMPD") from a confidential informant known to him and surveillance Reccius performed to corroborate the informant's information.  Detective Reccius, then a 13-year veteran of LMPD and a member of the FBI's narcotics task force for five years, was the affiant of the affidavit.  The affidavit related the following information:

Within the previous forty- eight hours, Detective Reccius had received information from a "confidential reliable informant" that a Cuban male transports large quantities of narcotics and it is kept at 11004 Harrison Lane in Louisville, Kentucky. (DN 68-1,  p. 5). The informant wished to remain anonymous for fear of his/her safety but the individual had been deemed reliable in the past and had given information that led to "multiple large narcotics seizures, money seizures, weapons seizures, and local and federal prosecutions on multiple occasions " (*Id.*).

Acting on this information, Detective Reccius conducted surveillance on the Harrison

Lane dwelling. (*Id.*). At 2:00 PM, he witnessed an individual leave the premises carrying a brown and red bag. (*Id.*). At a later time, he conducted a pedestrian stop of a Cuban male carrying what appeared to be the same brown and red bag. (*Id.*). The bag contained approximately five pounds of methamphetamine. (*Id.*).

In further support, the affidavit described Detective Reccius' knowledge from his thirteen years of training and experience that narcotics traffickers commonly "use stash houses to conduct narcotics trafficking." (*Id.*). The affidavit further noted that, in Detective Reccius' experience, it is a common practice of drug traffickers to employ a location on a dead-end road, like the Harrison Lane house, to stash large supplies of narcotics and cash because it is difficult for law enforcement to surveil these properties. (*Id.*).

LMPD sought a warrant to search 11004 Harrison Lane, four particularly described vehicles, and the person of Kupelian. Noting that the warrant affidavit does not mention anything at all about vehicles or Kupelian, the magistrate judge correctly found that the warrant lacked probable cause to search them. Nothing was seized from any vehicle or the person on Kupelian. The magistrate judge correctly concluded that this portion of the warrant clearly separable from the request to search Harrison Lane, and the infirmity with respect to the search of vehicles or persons did not require a finding that the warrant was invalid in its entirety, citing *United States v. Castro*, 881 F.3d 961, 965-66 (6th Cir. 2018).

With respect to the sufficiency of the affidavit to search 11004 Harrison Lane, the magistrate judge noted that, in assessing the veracity, reliability, and basis of knowledge of an informant, a strong showing of one factor may compensate for a deficiency of another. *Illinois v. Gates*, 462 U.S. 213, 233-234 (1983). Further, probable cause is a "'practical, non-technical

conception' that deals with the 'factual and practical considerations of everyday life.'"  *United States v. Frazier*, 423 F.3d 526, 531 (6th Cir. 2005)(quoting *Illinois v. Gates*, 462 U.S. at 231).

The magistrate judge found that there was "some detail" of the informant's prior record of providing accurate information to the police and quoted the statement that the informant "has been deemed reliable in the past and given information that has led to multiple large narcotics seizures, money seizures, weapons seizures, local and federal prosecutions on multiple occasions."  DN 68-1, p. 5.  Kupelian describes this language as "boilerplate."  DN 71, p. 1, DN 84, p. 1.  He notes that because Detective Reccius' affidavit (1) did not reveal the identity of the informant to the issuing officer, (2) described the reliability of the informant only in general terms rather than offering a specific affiliation with the affiant who was vouching for his/her reliability (used "boilerplate" language), and (3) the informant's tip did not relate first-hand knowledge or observation of the alleged contraband at the place to be searched, a more substantial showing of corroboration by independent police work was required to make a probable cause showing for the issuing judge.

We conclude, as did the magistrate judge, that the description of this informant as one who has provided accurate information multiple times leading to large narcotics and weapons seizures and federal and state prosecutions is something more than mere "boilerplate."  Compare *United States v. Smith*, 182 F.3d 473 (6th Cir. 1999)(experienced law enforcement officer attested that "on at least twenty-six (26) occasions provided information to ATF and the Detroit Police in reference to narcotics and/or firearms violations. In all instances, the information provided by this source was investigated and found to be true. This information also led to several felony convictions based on the seizure of firearms and narcotics.") and *United States v. Weaver*, 99 F.3d 1372 (6th Cir. 1996)(where affidavit consisted of preprinted form with "boilerplate" text with little space for additional information, statement that "there has been a previous occasion, or occasions, on which

6

the same informer has given information of violation of law of the state, which information thereafter was found to have been accurate and reliable" found to be require substantial corroboration as there was no information that this informant provided reliable information in the past leading to drug-related arrests or prosecutions).

The basis of knowledge of this informant's tip is thin inasmuch as the informant did not offer first-hand knowledge and the affidavit provides no factual background concerning the informant's assertions that "a Cuban male is storing large amounts of methamphetamine, cocaine, and marijuana, at 11004 Harrison Lane" and that "a large shipment of narcotics were received and arrived at the Harrison Lane address within the past 48 hours.  The shipment came from out of state and is being stored in the dwelling."  DN 68-1, p. 5.  Corroboration was necessary to substantiate these statements and Detective Reccius did independently investigate to do so, describing the undertaking in the affidavit.

Detective Reccius "conducted surveillance in Harrison Lane on 7/22/2019 and at approximately 1400 witnessed an individual carrying out a brown and red bag.  The affiant later conducted a pedestrian stop of a Cuban male carrying what appeared to be the same brown and red bag.  Inside the bag was a large quantity of methamphetamine.  Approximately 5 pounds of meth was recovered from this individual."  *Id.*   This appears at first blush to corroborate the informant's tip with respect to (1) a Cuban male trafficking in narcotics; (2) a large quantity of narcotics was presently stored at Harrison Lane; and (3) methamphetamine was being trafficked, and thus establish a "fair probability that contraband or evidence of a crime will be found in a particular place," all that is required for issuance of the search warrant.  *Illinois v. Gates*, 462 U.S. at 238.

Kupelian contends, however, that the affidavit fails to establish the requisite nexus between the evidence sought and the place to be searched. While the Court must look at the totality of the circumstances and consider the sufficiency of what the affidavit contains, "not on what it lacks, or what a critic might say should have been added,"[2] we must look at what information the affidavit actually offers to tie the particular brown and red bag of methamphetamine found in the possession of a "Cuban male" to 11004 Harrison Lane. According to Reccius, the bag was previously seen in the possession of a person observed leaving 11004 Harrison Lane.

The magistrate judge found that "while there are questions left unanswered from the affidavit, the totality of the circumstances from the CI's tip, the CI's reliability, Detective Reccius' corroboration efforts, and Detective Reccius' knowledge based on training and experience provide enough to support a finding of probable cause." DN 83, p. 6. "It is important to bear in mind that '[t]here are so many variables in the probable-cause equation that one determination will seldom be a useful "precedent" for another.' *See Gates,* 462 U.S. at 238 n. 11, 103 S.Ct. at 2332 n. 11. Thus, with only a little effort one may locate cases upholding searches in which the supporting affidavit's connection of the person suspected of a crime with the evidence sought and the place to be searched is skeletal." *United States v. Savoca*, 761 F.2d 292, 297-98 (6th Cir. 1985). We note too that "[p]robable cause is not a high bar." *United States v. Torbert*, No. 1:19-cr-31, 2021 WL 779147 (S.D.Ohio Mar. 1, 2021). Thus, we do not find error in the magistrate judge's rejection of Kupelian's argument that the issuing judge merely "rubber stamped" the warrant. This affidavit was not so lacking in indicia of reliability that the issuing judge abandoned his neutral and detached role in signing the search warrant.

---

[2] *United States v. Allen*, 211 F.3d 970, 975 (6th Cir. 2000)(*en banc*).

However, even if the information in the affidavit is "too scant to provide probable cause," as Kupelian suggests (DN 84, p. 2), this Court concludes, as did the magistrate judge, that under the authority of *United States v. Leon*, 468 U.S. 897 (1984), there is no basis to suppress the evidence.  The recent case of *United States v. Reed*, 993 F.3d 441, 450 (6th Cir. 2021) aptly states the reasoning underlying the *Leon* good faith exception to the Exclusionary Rule.  We quote at length from *Reed* here, as we could not state the rationale for its application any better.

> The Supreme Court's exclusionary rule bars the government from admitting incriminating evidence at a defendant's trial if the police violated the Fourth Amendment when discovering the evidence. *See Mapp v. Ohio*, 367 U.S. 643, 654, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961). Yet the exclusionary rule does not reach all Fourth Amendment violations no matter the circumstances. *See Davis v. United States*, 564 U.S. 229, 237–38, 131 S.Ct. 2419, 180 L.Ed.2d 285 (2011). Because the amendment "contains no provision expressly precluding the use of evidence obtained in violation of its commands," *Arizona v. Evans*, 514 U.S. 1, 10, 115 S.Ct. 1185, 131 L.Ed.2d 34 (1995), the Supreme Court has "felt free to adjust the rule's scope" by considering whether its benefits outweigh its costs in particular settings, *Baker*, 976 F.3d at 646.

> This case's setting involves a search pursuant to a warrant issued by a state judge. When a judge issues a warrant, the judge has made the independent decision that probable cause exists for the search. *Leon*, 468 U.S. at 921, 104 S.Ct. 3405. Because most police officers are not lawyers, they may be expected to defer to the judge's legal conclusion in that regard. *See id.* So if it later turns out that probable cause did not exist, the judge will typically be the blameworthy party, not the officer who relied on the judge's legal mistake. *See Davis*, 564 U.S. at 239, 131 S.Ct. 2419. Yet the exclusionary rule seeks to deter police (not judicial) misconduct. *See id.* And the officer's objective reliance on the judge's probable-cause opinion does not show the type of "flagrancy" required for the exclusionary rule's benefits to outweigh its costs. *Id.* at 237–38, 131 S.Ct. 2419 (quoting *Leon*, 468 U.S. at 911, 104 S.Ct. 3405). In *Leon*, therefore, the Court held that the exclusionary rule generally should not apply when officers obtain a warrant from a neutral judge. *See* 468 U.S. at 922–23, 104 S.Ct. 3405.

> That said, *Leon* identified several circumstances in which officers would be sufficiently blameworthy to trigger the exclusionary rule despite a judge's warrant (such as when the officers lie to obtain it). *See United States v. White*, 874 F.3d 490, 496 (6th Cir. 2017). As relevant here, *Leon*'s good-faith exception to the exclusionary rule does not apply if an officer's affidavit in support of the warrant is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." 468 U.S. at 923, 104 S.Ct. 3405 (citation omitted). This

9

type of affidavit—what we have called a "bare-bones affidavit"—shows that the officer recklessly relied on the judge's decision that probable cause existed for the warrant. *White*, 874 F.3d at 496.

*Leon*'s good-faith exception extends to this case's nexus question. Even if an affidavit describing a suspect's drug activity does not establish a probable-cause nexus between the place to be searched and the evidence of that activity, the affidavit will avoid the bare-bones label so long as it identifies a "minimally sufficient" nexus between the two. *Carpenter*, 360 F.3d at 596; *see also, e.g.*, *McCoy*, 905 F.3d at 416; *Jenkins*, 743 F. App'x at 645. What is the difference between a proper nexus *451 (sufficient for probable cause) and a minimal one (sufficient for *Leon*)? There obviously "must be daylight" between the two standards because *Leon*'s exception applies only when an affidavit falls short of probable cause. *White*, 874 F.3d at 497; *United States v. Washington*, 380 F.3d 236, 241 (6th Cir. 2004). We have described a minimally sufficient nexus as one in which there is "some connection, regardless of how remote it may have been—some modicum of evidence, however slight—between the criminal activity at issue and the place to be searched." *McCoy*, 905 F.3d at 416 (quoting *White*, 874 F.3d at 497).

*United States v. Reed*, 993 F.3d 441, 450–51 (6th Cir. 2021).

We find it appropriate to apply the *Leon* good faith exception in this case to preserve what was clearly the officers' good faith reliance on a facially valid warrant.  Detective Reccius received a tip from a known informant that within the past 48 hours a large shipment of narcotics was received and was being stored by a Cuban male at 11004 Harrison Lane, a dwelling located on a dead end road out of which large amounts of methamphetamine, cocaine, and marijuana were stored and distributed.  Detective Reccius sought to corroborate this information by surveilling the property.  He observed an individual leave the dwelling with a distinctive[3] "brown and red bag"

---

[3] We use the term "distinctive" only to indicate that Detective Reccius indicated that it appeared to him that the bag he seized was the same bag that he observed being taken from the dwelling.  The fact that the bag's appearance and its movements from the dwelling to the point at which it was seized were not described more particularly in the affidavit is a point of criticism leveled by the defendant.  The limited description which allowed Detective Reccius to identify it is contained in the affidavit, however, and Reccius' averment that the bag was in the possession of a Cuban male and contained a large quantity of methamphetamine save the affidavit from the criticism that it is "bare bones."  A bare-bones affidavit "asserts only the affiant's belief that probable cause existed. It provides nothing more than a mere guess that contraband or evidence of a crime would be found, either completely devoid of facts to support the affiant's judgment that probable cause exists, or so vague as to be conclusory or meaningless." *Id.* (internal quotation marks and citations omitted). *United States v. Hines*, 885 F.3d 919, 927 (6th Cir. 2018)(quoting *United States v. White*, 874 F.3d 490, 496 (6th Cir. 2017).

and later conducted a pedestrian stop of a Cuban male with what appeared to be the same brown and red bag which contained approximately five pounds of methamphetamine.  Believing, in his experience, that the Harrison Lane dwelling was being used as a stash house and having been able to confirm the tip by observation and later seizure of a distinctive bag containing a large quantity of methamphetamine that he contends he observed being taken from the dwelling, Detective Reccius put all of this information into an affidavit for search warrant for 11004 Harrison Lane and presented it for review by a state court judge just a few hours later.  The judge issued the warrant and LMPD officers executed it shortly thereafter.  Detective Reccius was assigned as the verification officer for the search warrant, pointing out the house then moving aside while the other officers made entry.  DN 79, p. 45. Reccius participated in interviewing the occupants of the house. *Id.*

Assuming without deciding that Detective Reccius' affidavit fell short of the probable cause standard, it contained "a minimally sufficient nexus between the illegal activity and the place to be searched" and we can conclude that the officers' reliance on the facially valid warrant was reasonable.   If the reviewing court is "able to identify in the averring officer's affidavit *some* connection, regardless of how remote it may have been"—"some modicum of evidence, however slight"—"between the criminal activity at issue and the place to be searched," then the affidavit is not bare bones and official reliance on it is reasonable. *United States v. Laughton*, 409 F.3d 744, 749–50 (6th Cir. 2005).  The United States Court of Appeals for the Sixth Circuit noted in *United States v. White*, 874 F.3d 490, 497 (6th Cir. 2017) that

> A bare-bones affidavit should not be confused with one that lacks probable cause. An affidavit cannot be labeled "bare bones" simply because it lacks the requisite facts and inferences to sustain the magistrate's probable-cause finding; rather, it

must be *so* lacking in indicia of probable cause that, despite a judicial officer having issued a warrant, *no* reasonable officer would rely on it. *United States v. Helton*, 314 F.3d 812, 824 (6th Cir. 2003). The distinction is not merely semantical… Only when law enforcement officials operate in " 'deliberate,' 'reckless,' or 'grossly negligent' disregard for Fourth Amendment rights" will the "heavy toll" of suppression "pay its way." *Davis v. United States*, 564 U.S. 229, 237–38, 131 S.Ct. 2419, 180 L.Ed.2d 285 (2011) (quoting *Herring v. United States*, 555 U.S. 135, 144, 129 S.Ct. 695, 172 L.Ed.2d 496 (2009), and *Leon*, 468 U.S. at 908 n.6, 104 S.Ct. 3405). Otherwise, "when the police act with an objectively 'reasonable good-faith belief' that their conduct is lawful," excluding evidence recovered as a result of a technically deficient affidavit serves no useful purpose under the exclusionary rule. *Id.* at 238, 131 S.Ct. 2419 (quoting *Leon*, 468 U.S. at 909, 919).

*United States v. White*, 874 F.3d 490, 497 (6th Cir. 2017).

We find this to be the quintessential case evidencing good faith reliance as the affidavit contained (1) information concerning a fresh tip from an informant who was known and reliable but unidentified in the affidavit, (2) corroboration by the affiant of specifics provided in that tip, (3) seizure of contraband by the affiant during the investigation which had been referenced in the tip, and (4) an explanation concerning what the affiant learned and observed that prompted his belief, based upon his knowledge and experience, that probable cause existed for the issuance of the search warrant.  The affiant observed the brown and red bag containing a large quantity of methamphetamine being taken from the location identified by the CI as a stash house.  Under these facts, and "[a]pplying a 'practical, common sense manner' reading of the warrant, [citation omitted]*,* we are of the opinion that only a police officer with extraordinary legal training would have detected any deficiencies in that document."  *United States v. Van Shutters*, 163 F.3d 331, 337 (6th Cir. 1998).  *See also*, *United States v. Bethel*, 245 F.App'x. 460 (6th Cir. 2007)(collecting cases); *United States v. Reed*, 993 F.3d 441 (6th Cir. 2021)*; United States v. Torbert,* No. 1:19-cr-31, 2021 WL 779147 (S.D.Ohio Mar. 1, 2021).

For these reasons, the motion to suppress evidence seized from 11004 Harrison Lane will be denied.

2.   Motion to Suppress Statements Made by Kupelian

The magistrate judge held an evidentiary hearing addressed to this motion and a transcript of the proceedings was prepared. DN 79.  Both Detective Reccius and Officer Marbin Batista Garcia, a Cuban native who assisted as a translator during the interviews of the individuals found at 11004 Harrison Lane during the search, testified concerning the interview of Kupelian.

The magistrate judge found that Detective Reccius arrested and detained Kupelian, and that Officer Garcia translated the *Miranda* warnings for Kupelian as Detective Reccius read them to him in English from his warrant card. DN 83, p. 9.  After translating the rights into Spanish, Officer Garcia asked Kupelian if he understood those rights to which Kupelian responded that he did.  *Id.* After this affirmative response, Detective Reccius proceeded to interview Kupelian, with Officer Garcia translating.  During the interview, Kupelian stated that there were drugs in the back bedroom of the house but that they were not his. *Id.* at 11.  He declined to identify the owner. *Id.* Kupelian admitted that the guns in the home belonged to him.  *Id.*

In a thorough analysis, the magistrate judge found that despite the lack of a video recording or waiver form documenting the giving of the *Miranda* warning, the officers' consistent testimony concerning the process by which the warning was offered and acknowledged and the interview was conducted, Kupelian was properly warned and voluntarily waived his right to remain silent. The magistrate judge concluded that the process was free from intimidation, coercion, or deception.  The magistrate judge also found that Kupelian's selective responses to questions supported the finding that he understood the right to remain silent and the consequences of waiving such right.  *Id.* at pp. 16-17 citing *United States v. Crumpton*, 824 F.3d 593, 608 (6th Cir.

13

2016)(suspect was aware of his rights when he "selectively declined to answer certain questions regarding the narcotics that were located in the home").

Kupelian raises three objections to the magistrate judge's findings that Kupelian knowingly and voluntarily waived his *Miranda* rights.

First, he urges that the inclusion of Kupelian's name in the warrant "added to the coercive environment in which…he was interrogated." DN 84., p. 3. This argument is without merit as there was no testimony or evidence offered that Kupelian knew he was named in the search warrant or that he attached any significance to the search warrant in connection with his *Miranda* rights.

Second, he notes that although Officer Garcia read the *Miranda* rights into the record at the hearing, his Spanish translation was not provided in the transcript, "so no comparison can be made." *Id.* True enough, however Officer Garcia is a native Spanish-speaker, Cuban-born and educated, with five years' experience as an officer with LMPD. He served as a translator "hundreds of times" during the course of that employment. DN 79, pp. 5-6. He testified that he could tell whether an interviewee understood what he was saying, and that Kupelian understood his rights and acknowledged that he understood. There was nothing offered to contradict this testimony. Based upon this testimony, the Court is unwilling to discredit the recognized ability of Officer Garcia to accurately translate the *Miranda* warning. The Court rejects Kupelian's objection on this point.

Third, Kupelian objects to the magistrate judge's statement in her Report that "Detective Reccius' recollection of the events is largely the same as Officer Garcia's." DN 83, p. 10. Kupelian notes that at the hearing, Officer Garcia recalled the interview lasting a long time while Detective Reccius testified that it lasted about ten minutes. He notes that Detective Reccius does not speak Spanish so was not able to relate word-for-word what Kupelian said in the interview.

Kupelian thus challenges the conclusion that his waiver was knowing and voluntary, noting that there was no recording or written waiver to establish that fact.

The magistrate judge correctly found that a written waiver or recording, while possibly helpful, is not required. She concluded that Detective Reccius and Officer Garcia offered similar testimony concerning their offer of the *Miranda* warning to Kupelian, his response that he understood, followed by his voluntary answers to some of the questions posed by Detective Reccius. She cited to each officer's testimony in her Report. That Officer Garcia thought that the interview lasted a long time while Detective Reccius testified that it was brief is of no moment. There were apparently quite a few individuals interviewed that day and Officer Garcia translated for most of them. Officer Garcia testified that despite having an incorrect recollection of Kupelian's name, he did remember his face and the encounter.

We do not find that a lack of consistency in minor details calls into question the pertinent consistent testimony concerning the giving of *Miranda* rights – a legal requirement which both officers testified they attended to and provided properly. Further, Kupelian has cited no authority, and we know of none, that stands for the proposition that the fact that the interviewing officer requires a translator to communicate with a detainee precludes a finding that a knowing and voluntary waiver was obtained through translated communication. Again, we note that there is no evidence contradicting the officers' testimony concerning the process employed in providing Kupelian his *Miranda* warning and his knowing and voluntary waiver of his rights.

Kupelian's motion to suppress statements made at the time of his arrest will be denied.

Motions having been made and for the reasons set forth herein and the Court being otherwise sufficiently advised,

15

**IT IS HEREBY ORDERED AND ADJUDGED** that the Report and Recommendation of the United States Magistrate Judge (DN 83) is **ACCEPTED AND ADOPTED IN ITS ENTIRETY AS SUPPLEMENTED BY THIS MEMORANDUM OPINION AND ORDER.**

**IT IS FURTHER ORDERED** that the objections of defendant Miguel Angel Paulet Kupelian to the magistrate judge's report (DN 84) are **OVERRULED** and his motions to suppress evidence (DNs 64 and 65) are **DENIED.**

**IT IS SO ORDERED.**

September 3, 2021

Charles R. Simpson III, Senior Judge
United States District Court

16